Gkeen, J.
delivered the opinion of the court.
Thomas Blount of North Carolina, made his last will and testament in 1808, which was proved and recorded in 1812, the sixth clause of which is as follows:
“I give and bequeath to the three sons and two youngest daughters of my second brother William Blount, all the rest of my share of the lands in Tennessee, owned by John G. and Thomas Blount, to be divided among them or the survivors of them, at the time of my death, equally, share and share alike, but it is to be understood that out of these lands, before a division of them is made, such as is herein directed, is to be raised by my executors in such manner as they shall think best, a sum of money equal to all my just debts, which they shall appropriate to the payment thereof.”
He appointed John Gray Blount, Willie Blount, Thomas H, Blount and Wm. G. Blount his executors, of whom Wm. G. Blount and Thomas H. Blount alone qualified. It was agreed, “that the other two executors did not qualify, nor would they qualify or act as executors, but no refusal or renunciation was ever made in court or entered of record, nor did they ever refuse by writing of any kind whatever.”
A deed was executed to the land in controversy, the 27th of September, 1823, to John Catron by the two acting executors, Thos. H. and Wm. G. Blount, reciting, “that whereas Elijah Robertson had located lands for the said Thomas Blount, deceased, and the said Thomas was indebted to the said Robertson for said locating, and *377 about the year 1789, did by a formal deed, convey to the said Elijah the fifteen tracts of land hereinafter described, conjointly with his brother John Gray Blount, the said fifteen tracts of land having been granted to the said John Gray and Thomas Blount jointly, and afterwards said deed of conveyance was lost without ever having been registered. And whereas, in the year 1797, the said Elijah Robertson died, leaving Elizabeth Robertson, afterwards Elizabeth Childress, Patsey Robertson, afterwards Patsey Hannum, Sterling C. and Eldridge B. Robertson, his heirs at law. And whereas, about the year 1808, the said Thomas Blount died, leaving a last will, which contains power to pass real estate, and by which will he appointed his brothers John Gray Blount and Willie Blount, and his nephews Thomas Henry Blount and William G. Blount, his executors, and who by his will were instructed to raise .out of the lands granted to John Gray and Thomas Blount, and lying in Tennessee, in such manner as his said executors should think best, a sum equal to all his just debts, which they should appropriate to the payment thereof. And whereas, the said Thomas H. Blount and William G. Blount qualified as executors of said will, and have acted in execution thereof, the said John G. Blount and 'Willie never having qualified as executors to said will, nor acted as such. And whereas, the heirs of the said Elijah Robertson have assigned their claim against the estate of the said Thomas Blount, to the said John Catron, in part, and requested that the payment should be made to said Catron, by the conveyance of lands or .otherwise, in full discharge of said demand. Therefore, to supply said lost deed, and to discharge said demand of the heirs of Elijah Robertson against the estate of the said Thomas Blount; we the said Thomas H. Blount and William G. Blount, executors of the will of Thomas Blount, do hereby bargain,” &c.
E. B. Robertson plaintiff, derived title from a grant to John G. and Thomas Blount, the will of Thomas Blount, the aforesaid deed of his executors to Catron, a deed from John G. Blount to Catron, and a deed from Catron to himself.
The defendant, E. P. Gaines, intermarried with Barbara Blount, one of the devisees of the Tennessee lands, by whom he had issue capable of inheriting; and was admitted to defend for tenants in possession, as their landlord; claiming the land as such devisee.
I. The principal question arising upon this state of facts is, whether the conveyance to Catron by only two of the executors of *378 Thomas Blount, the other executors named in the will never hav* ing qualified or acted as such, is valid to pass the title of the testator' to the land in question.
The general principle of the common law laid down by Lord Coke (Co. Litt. 112, b) is, that a mere naked power to sell, not coupled with an interest, given to several persons, must be executed by all, and does not survive. But when it is coupled with an interest, it may be executed by the survivor. 2 John. Chan. Rep. 19: 10 Peters Rep. 564.
In the application of this rule, much difficulty has arisen. The distinction between a naked power, and a power coupled with an interest, is laid down by Mr. Justice Thompson, in the case of Peter vs. Beverly, (10 Peters Rep. 564,) with as much precision as the question is susceptible of being treated. It is this: “a mere direction in a will to the executors to sell lands, without any words vesting in them an interest in the land, or creating a trust, will be only a naked power, which does not survive.” “But when any thing is directed to be done, in which third persons are interested, and who have a right to call on the executors to execute the power, such power survives.”
It is not necessary that the executor should have a personal interest in the thing to be done. The possession of the legal estate, or a right in the subject, over which the power is exercised, creates the interest. Hence a trust will survive, though no way beneficial to the trustee. 2 John. Chan. Rep. 20: 10 Peters Rep. 564. When there is a trust charged upon executors, in the disposition they are directed to make of the proceeds, it is the settled doctrine of a court of chancery, that the trust does not become extinct by the death of one of the executors. 2 John. Chan. Rep. 20.
The devise in this case, is in the following terms: “But it is to be understood, that out of these lands, before a division of them is made such as is herein directed, is to be raised by my executors, in such manner as they shall think best, a sum of money equal to all my just debts, which they shall appropriate to the payment thereof.”
The power thus conferred, is vested in the executors as such, to be exercised by virtue of their office, for the benefit of creditors, among whom the fund was to be distributed. The direction to raise money out of the land without specifying how it was to be raised, conferred the power to sell it. In the case of Bateman vs. *379 Bateman, (1 Atk’s, 421,) the testator directed that if his personal estate and house and land at W. should not pay his debts, then his executors were to raise the sum out of his copyhold estate. It was held, that the power thus conferred, authorised a sale of the copy-hold estate. See also, 2 Story’s Eq. 324.
But in relation to the lands out of which the money in this case was to be raised, there is much stronger reason for- saying that a sale of them is authorised, than exists in the case above referred to. In this case the lands were wild and unimproved, and no effectual means of raising money out of them for the payment of debts existed, but by their sale. And as the great and leading principle which applies to the construction of other parts of a will, should also be applied to the construction of powers conferred by it, to wit, to ascertain and carry into effect the intention of the testator, we cannot be mistaken in the conclusion that it was his intention by this clause, to confer a power of sale. The case of Wooldridge vs. Watkins, (3 Bibb Rep. 350,) is not an authority against the power of sale in this case. In that case the will left it to “his executors to sell or exchange his real estate as they might judge necessary for the advantage of his estate.” No sale of the estate was directed either by express words or by implication. They were to sell or exchange as they might judge necessary for the advantage of the estate. It might not be for the advantage of the estate to do either, so that no disposition of the estate is unconditionally directed to be made. In that case too, there was no interest vested in the executors, no trust created by the will, so that any person interested in the execution of the power, could come into a court of equity and enforce it. But the case is wholly different where money to pay debts is directed to be raised. In such case, the creditors are interested in the execution of the power, and have a right to require the executors to fulfil the trust for their benefit. In a case like this, by the rule of the common law, a surviving executor would be authorised to execute the power.
By the statute, 21st Henry 8, ch. 4, acting executors, when the others refuse to act, are put upon the same footing with surviving executors. The statute provides, “That, when part of the executors named in such testament, directing such lands, &c., to be sold by the executors, do refuse to take upoif himself or themselves the administration and charge of the same testament, or last will, that then all bargains and sales of any such lands, &c., made by him or *380 them only of said executors, that so' doth accept,' shall be as good and effectual in law as if all the said executors, so refusing- the administration of the same will, had joined in such bargain and sale.”
This brings us to the consideration of the question, what shall be regarded as a refusal, within the-meaning of the statute?
It is contended by the counsel for the defendant in error, and so1 the circuit court charged the jury, that a refusal must be made a matter of record, otherwise- a sale- by the acting executors would be void.
It is certainly true- that the Spiritual court- in England will not commit the administration of an- estate to another, until the refusal of the executor to act has been recorded in the court. 1 Williams Ex’rs, 153: Went. Off. Ex’r, 88, 14th Edition. But if the executor send a letter to- the Ordinary, by which he- renounces, and the refusal be recorded, it is sufficient. 1 Williams Ex’rs, 153. If administration be granted to another,- before the executor has renounced of record, it is absolutely void. Tol. Ex. 44, 93, 120. The reason is, that in England the executor’s title is derived from the- wiM, and does not depend upon the grant of -letters testamentary. A title to the goods and chattels is vested in- the executor immediately upon the testator’s death. Toller Ex. 40. Until he renounces, that title cannot be divested. But if a grant of administration, before such renunciation, were' valid,- it would vest the title to-the goods in the administrator, and thereby divest the executor of Ms title, in violation of the principle above stated. It follows that administration granted before such renunciation is void.
But in this State, North Carolina, Virginia, and, perhaps other States of the Union, the law in this particular has been changed.
By the act of 1715, ch. 48, sec. 4, it is provided, that “no person shall enter upon- the administration of any deceased person’s estate until he has obtained letters of administration, or letters testamentary,- under the penalty,” &c.
By the 5th section, it is provided-, that letters testamentary should not issue, until the executor took an oath to. perform the will of the testator.
By the act of 1813, ch. 119, sec. 3, (Car. & Nich. 79,)’ it is provided, that “all executors, of every description, shall, before they presume to enter upon the administration of any estate whatever, enter into bond and security in the same way that administrators are required to do.”
*381 By these acts, executors are prohibited from meddling with the festate until they obtain letters testamentary, give bond and security, and swear to perform the testator’s will. So that the will alone confers upon the executor no title whatever, and if he neglect to prove the will, qualify, and give bond and security, the court of probate may act upon the estate, and' grant letters of administration. 4 Yer. Rep. 16. No formal renunciation is required; but letters of administration are valid without such refusal.
From this comparative view of the powers of the courts of probate, in England and this country, it may be seen that, however, the question under consideration may be considered in England, here, no record evidence of refusal to act is necessary. Indeed, it is questionable whether it be necessary in England. The evidence of refusal, that the Ordinary will require, before he will grant administration, is not necessarily the only evidence that would establish such refusal, so as to validate a sale made by acting executors. All the authorities upon the subject of the necessity of refusal being of record, are applicable to the question of the power of the Ordinary to grant administration. And we have seen, that a mere letter which he orders to be recorded, will be sufficient. Andas there is much more reason for requiring a solemn act of renunciation of record, in reference to the question of granting administration, than need be demanded to make valid the acts of co-executors who are acting in the administration of the estate; and as in the former case, a mere letter will do; it would seem, that in the latter case any act, in pais, evidencing such refusal, would be sufficient. And as there is no case in which it has been held, that a sale by acting executors was void because the co-executor, who did not join in the conveyance, had not refused of record to act, a strong presumption exists, that the courts would not so decide. There is no reason why any other satisfactory evidence wall not be sufficient. The statute does not prescribe the mode of proof; for the fact, that before the passage of the statute, the Spiritual court had adopted the rule, that a renunciation must be of record, in order to their action in granting administration, is a very slight circumstance to prove that the statute meant to require the same proof in reference to a very different subject; and one in relation tc which the reason for adopting the rule did not exist. But be this as it may in England, it would certainly be extremely inconsistent in us to require stronger and more authentic evidence of a re *382 fusal to act, in order to make valid a sale under the statute, by acting executors, than we require in order to make a grant of administration valid. And we have seen that a neglect to give bond and qualify, is sufficient in the latter case. So in the former, neglect is evidence of refusal, for while he neglects, he refuses.
This view of the subject is supported by several cases in the United States, and is opposed by none. In the case of Gaddy & Knox vs. Butler and wife, (3 Munf. Rep. 345,) the court of appeals of Virginia decided, that a renunciation need not be of record to justify a deed made by the executors who acted; and that a refusal may be found, either in a declaration to that effect in pais, or presumed, as in other cases. It is argued, that this case is not an authority, because the judgment was reversed, the special verdict having found that the deed was executed by a part of the executors, the other never having taken upon themselves the burthen of the execution of the will, and never relinquished their right so to do; and the judgment of the court below having been in favor of the deed, its reversal shows, that upon the facts stated in the special verdict, the court did not consider the acting executors had power to make it. But upon looking into the opinion of the court, which is very short, it will be seen that the jury did not find a refusal of the other executors, which, they say, was necessary to be found; but that the evidence upon which they were authorised to find such refusal need not be a renunciation of record, but that it might be found either from declarations in pais, or presumed, as in other cases. The judgment of the court below was reversed, because the verdict was too defective in this particular. But a venire facias de novo was awarded, which is conclusive that the court considered the evidence sufficient to have justified the jury in finding a refusal. Had they not thought so, they would not have remanded the cause for another trial; for it was distinctly found by the jury, that the executors, who did not join in the deed, never relinquished their right to take upon themselves the burthen of the execution thereof. So that it is perfectly clear, that if the court had deemed an express relinquishment necessary, a judgment final would have been rendered for the defendants.
The case of Wood vs. Sparks, 1 Bat. & Dev. Rep. 389, is a very strong authority upon this point. I have not that case now before me, but I examined it last winter, and was impressed with the clearness and force with which the question was discussed by *383 Gaston, one of the most enlightened and able judges of this day.-— The court held, that a neglect to qualify, was a refusal, prima facie, and that a deed executed by acting executors was valid.
Fortified by these authorities, and by our own convictions of the reason of the rule, especially under our system, we have no hesitation in pronouncing, that a neglect' to qualify is prima facie evidence of refusal, and will validate a sale by the acting executors.
2d. But it is contended by the defendants in error, and so the court charged the jury, that the recital in the deed to Catron, that John G. Blount and the testator had executed a deed for these lands to Elijah Robertson in 1789, which had never been registered and was lost, is evidence of an outstanding title, which would prevent a recovery in this case. We need not stop here to investigate the question, what effect will be given to such recitals in a deed; it is sufficient for the present purpose to say, that the covenant of warranty in the deed of the executors to Catron estops the defendant here from setting up an outstanding title against it. The record shows that he claims title to this land as a devisee under the will, by virtue of which these executors acted in making the deed. He is, therefore, a privy in estate, and can no more set up a title in opposition to a deed of the executors, made -in pursuance of the will, than if the deed had been made by the testator himself. And it will not be pretended, that if Thomas Blount had executed the deed with these recitals, either himself, his heirs or devisees could set up an outstanding title against the covenant of warranty, so as to defeat the very title created by his deed. There was, therefore, error in this part of the charge of the court.
3d. But it is insisted that the recital' in the deed, that it was made in satisfaction of a demand for locating services performed by Elijah Robertson,and to supply a lost deed which had been executed to him for that purpose, which claim, in part, had been assigned by the heirs of Elijah Robertson to John Catron, to whom the deed was executed, does not present a case falling within the power conferred upon the executors to sell land for the payment of debts; and therefore the deed is void.
Upon this question we have very great difficulty, and we are unable to arrive at any satisfactory conclusion. The case has been argued elaborately, and with much ability on both sides, but other questions have been deemed more important, and have occupied the chief attention of counsel. We, therefore, decline the discus *384 sion, and the decision of this last point at this time, that it may receive hereafter that attention its difficulty and importance demands.
Let the judgment be reversed, and the cause be remanded to the circuit court of Shelby county, for a new trial to be had therein.